IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| vs. | * | Case No. 19-cr-00280-ELH-2 |
| **John Paul Jones** | * | |
| | ****** | |

## MEMORANDUM AND ORDER

On June 3, 2020, Defendant filed a Motion to Reopen Detention Hearing seeking to reargue the issue of his detention due to the unanticipated and material change in circumstances brought about by the COVID-19 pandemic pursuant to § 3142(f))(2)(B) of the Bail Reform Act, 18 U.S.C. § 3141, *et seq*. (the "BRA"). (ECF No. 214). Defendant's argument is that, given the increased risk of spread of the virus in a custodial situation like the Chesapeake Detention Facility ("CDF") where he is currently detained pending trial, and given his potential susceptibility to complications should he contract the virus, he should be released to home confinement. *Id*. at 2-3. On June 8, 2020, the Government filed its Response in Opposition. (ECF No. 216). On June 9, 2020, Defendant filed a Reply. (ECF No. 217). On June 10, 2020, at Defendant's invitation, this Court ordered production of Defendant's medical records from CDF (ECF No 218), filing a copy of the records received under seal on June 11, 2020 for the benefit of the parties (ECF No. 219).

Defendant's motion is **DENIED**. Following is the Court's rationale.

Defendant was originally ordered detained by the Court following a detention hearing on October 2, 2019. (ECF No. 107). The COVID-19 pandemic had not yet emerged. This Court has previously recognized under similar circumstances that the COVID-19 pandemic does meet

the requirements of § 3142(f)(2)(B) so as to justify the Court revisiting the detention issue to consider the pandemic. *See, e.g., United States v. Martin*, 2020 WL 1274857 (D.Md.; March 17, 2020). Though the pandemic is therefore a valid factor in the Court's detention analysis, it is not the only factor, and must be considered within the overall framework of the BRA.

The BRA focuses the Court's pretrial detention inquiry on two issues: (1) a defendant's risk of nonappearance; and (2) the danger that the defendant's release would pose to other individuals. *Id*. at § 3142(f). Congress then specified the criteria that this Court must weigh when assessing those two issues. *See* 18 U.S.C. § 3142(g). As this Court recently observed, none of those factors refers specifically to whether the conditions of detention threaten the defendant's well-being given his health status. *United States v. Gallagher*, 19-479-SAG (ECF No. 34; 5/22/20); *United States v. Thompson*, 2020 WL 2839095 (D.Md.; June 1, 2020).

As noted in *Thompson*, *supra*, at *2, a defendant's physical condition can nonetheless be relevant to a § 3142(g) assessment as it relates to assessing his propensity to appear and/or potentially harm others, or might alternatively support temporary release under Section 3142(i) under appropriate circumstances. *See, e.g., United States v. Creek,* 19-036-CCB (ECF No. 421; May 1, 2020) (granting temporary release from the D.C. Jail complex due to defendant's underlying health conditions). In the former, physical condition is weighed along with the other 3142(g) factors as they relate to risk of nonappearance and danger a defendant's release would pose to the community. In the latter, the burden is on a defendant to show that those health concerns are "compelling," outweigh the other 3142(g) factors, and that the defendant's release does not, in turn, pose an increased health risk to the community. *See, e.g., United States v. Clark,* 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also*, *Creek, supra,* ECF 402 (April 15, 2020) (directing the District Court to consider "in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the

current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).").

Defendant has made arguments under both sections. Accordingly, the Court will address the factors set forth in § 3142(g) as they relate to the danger release would pose to the community,[1] and, alternatively, a consideration of temporary release under § 3142(i), both in the setting of COVID-19.

1. Section 3142(g) Analysis

Defendant is indicted in a drug conspiracy and also faces weapons charges to include the possession of a firearm in relation to a drug trafficking crime. (ECF No. 21). The charges carry a rebuttable presumption of detention pursuant to § 3142(e)(3), and, if convicted, Defendant faces a mandatory minimum of five years in prison. Thus, the nature and circumstance of the offense charged are serious.

At the detention hearing, the Government supported its proffer with wiretap evidence of calls between Defendant and co-conspirators, including the alleged head of the drug trafficking organization. (ECF No. 216 at 5-8). These calls strongly suggest Defendant was involved in arrangements involving the sale of marijuana, heroin and cocaine, and, on occasion, indicated in such calls that he possessed a firearm in relation to these activities.[2]

In terms of his criminal history, among other convictions, Defendant has two prior drug felony convictions, along with a second-degree assault conviction. *Id*. at 8. He has two prior

---

[1] The Court had found at the original detention hearing that Defendant does not pose a significant risk of nonappearance. (ECF No. 107).

[2] Defendant challenges the characterization of these calls as establishing that Defendant is an "enforcer" for the organization, and also points out that the head of the organization with whom Defendant is speaking on some of these occasions is also Defendant's uncle. (ECF No. 217 at 3-4). At a minimum however, the wiretap evidence demonstrates conversations relating specifically to the distribution of controlled substances and the possession of a firearm by Defendant on at least some of those occasions. Those activities, even without more, create a significant danger to those involved and bystanders.

instances of violation of the terms of supervised release, one of which was ultimately closed in an unsatisfactory manner. *Id.* According to Pretrial Services, Defendant also had two attempted first-degree murder charges placed on the STET docket. While the Court does not give heavy weight to charges that do not result in conviction, such serious charges close in time are at least a consideration.

Based on the above, this Court found that Defendant had failed to rebut the presumption of detention and found by clear and convincing evidence at the hearing that no condition or combination of conditions could reasonably assure the safety of the community should defendant be released. (ECF No. 107).

1. The basis of Defendant's motion is not the re-weighing of the above factors that were already analyzed by the Court in its original detention decision. Rather, Defendant's "new and material" information relates to the COVID-19 pandemic. Defendant cites one positive case of COVID-19 among the detainees at CDF (and among two staff members[3]) and argues that his underlying health may put him at risk for complications should he contract the virus because of asthma and Crohn's disease. (ECF No. 214 at 2). The Court does not find that this alters its previous § 3142(g) analysis.

To begin with, although the Centers for Disease Control does note that those suffering with "moderate to severe" asthma may be at increased risk for complications should they contract COVID-19, Defendant's medical records indicate that his asthma is "mild and intermittent." (ECF No. 219). Defendant has been diagnosed with Crohn's disease, but his medical records establish that he is not prescribed medication for that condition and has had no

---

[3] The Government suggests that there were actually five staff members/contractors who tested positive for the virus (ECF No. 216 at 10), while the Maryland Department of Public Safety and Correctional Services reports eight positive cases among staff, five of whom have recovered. *See* https://news.maryland.gov/dpscs/covid-19/ (last visited June 8, 2020).

complications since having a surgery for it that predates his detention. Although Defendant has provided a medical article indicating that those with such disorders "could theoretically be more susceptible" to COVID-19, he concedes that there is "no 'clear cut' evidence to support this possibility." (ECF No. 214 at 2). This does not give the Court any confidence that COVID-19 concerns would significantly enhance Defendant's compliance with release conditions so as to sufficiently offset the risks raised by the other 3142(g) factors noted above, especially given his prior poor track record on supervision.

    2. Section 3142(i) Analysis

As outlined in *Clark*, *supra*, a court's analysis in assessing whether a defendant has met his burden of establishing a "compelling" reason for temporary release in the setting of COVID-19 involves determining whether the health risk to a defendant from his continued detention outweighs both the traditional § 3142(g) factors and the health risk to the community that he would pose if released. Looking at Defendant's specific health risk, as noted above, Defendant does not provide support for his assertion that he is at increased risk for complications should he contract the virus. Moreover, even if Defendant is at some enhanced risk, this does not outweigh the strong case for detention under the other § 3142(g) criteria.

Although it is certainly true that those in a custodial situation such as a detention facility are at increased risk of contracting the virus, CDF has taken a comprehensive set of precautionary measures to protect its staff and its residents, as outlined in great detail by the Government. (ECF No. 216 at 10-14). Defendant questions the extent to which such measures have been effectively implemented, analogizing the conditions at CDF with those found at the D.C. Jail complex where other federal detainees are housed. (ECF No. 217 at 5-6).

The Defendant is correct that, despite early assurances to the contrary regarding the D.C. Jail's response to COVID-19, conditions at that facility relative to the pandemic were ultimately

found so lacking as to constitute likely Fifth Amendment violations so as to justify the entry of a temporary restraining order by the judge presiding over a class action brought by its detainees. *See Banks, et al v. Booth, et al.*, 2020 WL 1914896 (D.D.C. 4/19/20), at *13-16.[4]  It is therefore understandable for Defendant to question whether the measures at CDF as described by the Government are being implemented as described and are effective.  Nonetheless, the experience at the two institutions—operated by two different agencies in two different jurisdictions--now three months into the pandemic has been significantly different.  In comparison to CDF's one inmate who tested positive upon arrival from another facility, the D.C. Jail during the same time period has had well over 200 cases of the virus and one death.  Moreover, weekly updates regarding the COVID-19 situation at CDF are posted by the Maryland Department for Public Safety and Correctional Services which runs CDF under contract to the United States Marshals Service.  Thus, whatever measures are being taken have been adequate to protect the detainees at CDF to a much greater degree relative to their counterparts at the D.C. Jail and other detention facilities.  In addition to these measures, on May 20, 2020, Governor Larry Hogan, announced universal COVID-19 testing at all state-run correctional and juvenile facilities, including CDF, which can only help prevent further transmission.[5]

Defendant also argues that, should he contract the virus, he will not have adequate access to medical care based on counsel's past observations of the CDF correctional health care apparatus in other cases. (ECF No. 217 at 6).  To be sure, rendering health care in a correctional setting is challenging.  The Court can also recall instances where that system has fallen short with regard to particular inmates' health needs.  But the Court cannot generalize from such

---

[4] Notably, notwithstanding finding likely constitutional violations at that facility, the presiding judge in *Banks* has not ordered the release of any inmates at the D.C. Jail based on those conditions, but instead has focused on remedying such violations.

[5] Pamela Wood & Phillip Jackson, "Maryland to test all detainees, staff at prisons and juvenile facilities for coronavirus," *Baltimore Sun* (May 20, 2020), https://www.baltimoresun.com/coronavirus/bs-md-prison-testing-20200520-wroxapcoljbrvmv7lcsh4vrn2e-story.html.

anecdotes so as to make the leap that *if* Defendant contracts the virus, and *if* the Defendant were to develop complications, Defendant would be so likely to receive substandard care that such risk outweighs the other § 3142(g) factors at a facility whose COVID-19 experience to date has been minimal. As the Government notes, there are multiple points of access for detainees with chronic diseases to seek medical care, whether for routine or emergency needs, including on-site dispensaries, infirmaries, and clinics that provide acute and chronic treatment for these types of illnesses. *Id*. at 15-16. Defendant's medical records from CDF document that Defendant has received evaluation, care and medications during his detention. (ECF No. 219). Thus, Defendant has not met his burden of proof so as to justify temporary release.

Accordingly, Defendant's Motion is **DENIED**.

6/12/2020
Date

J. Mark Coulson
United States Magistrate Judge